Scott A. HIGGINS, Appellant,

v.

Phillip BRIGGS, Superintendent, Cook Inlet Pre–Trial Facility, Alaska Dept. of Corrections, Appellee.

No. A–4732.

Court of Appeals of Alaska.

June 24, 1994.

Scott A. Higgins, pro se.

John K. Bodick, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before COATS and MANNHEIMER, JJ., and WOLVERTON, District Court Judge.*

*OPINION*

MANNHEIMER, Judge.

Scott A. Higgins appeals the superior court's denial of his petition for writ of habeas corpus. For several years, Higgins had been a prisoner in the custody of the Alaska Department of Corrections. As punishment for Higgins's various violations of prison rules, the Department of Corrections had, at different times over the last five years, taken

---

* Sitting by assignment of the chief justice made pursuant to Article IV, Section 16 of the Alaska Constitution.

away portions of the good time credit Higgins accrued under AS 33.20.010. Higgins filed a petition for writ of habeas corpus in the superior court, claiming that the Department of Corrections had imposed excessive penalties for his violations of prison rules— that his violations of the rules were too minor to merit such an extensive loss of good time credit. Higgins further argued that, if his good time credit was restored, he would be entitled to immediate parole release under AS 33.20.040(a).

Higgins's petition followed a tortuous path through the superior court. The State asserted that the court should treat Higgins's petition as an application for post-conviction relief under Alaska Criminal Rule 35.1. The court initially agreed with the State and, under *Donnelly v. State,* 516 P.2d 396, 399 (Alaska 1973), the court appointed the Public Defender Agency to represent Higgins. However, the Public Defender Agency almost immediately asked the court to vacate their appointment. The Agency argued that, under *Department of Corrections v. Kraus,* 759 P.2d 539, 540 (Alaska 1988), Higgins could pursue neither a petition for writ of habeas corpus nor a petition for post-conviction relief. Instead, the Agency argued, Higgins's sole remedy was an administrative appeal, and the Agency did not have the statutory authority to represent Higgins in an administrative appeal. *See* AS 18.85.100.

Superior Court Judge Karen L. Hunt ultimately accepted the Public Defender Agency's characterization of the litigation. Relying on the Alaska Supreme Court's decision in *Kraus,* Judge Hunt ruled that Higgins's only avenue of relief was through an administrative appeal. Moreover, relying on *Kraus* and on *McGinnis v. Stevens,* 543 P.2d 1221 (Alaska 1975), Judge Hunt ruled that, in an administrative appeal, Higgins could litigate only allegations of constitutional error (generally, failure of the Department to afford him due process in the disciplinary proceedings). Because Higgins did not argue that he had been denied due process, but rather argued that the Department had imposed disproportionate penalties for his various infractions of prison rules, Judge Hunt concluded that Higgins's petition did not raise

constitutional issues. Instead, Judge Hunt concluded that Higgins's petition was in the nature of a consolidated sentence appeal from a series of Department of Corrections disciplinary decisions. Judge Hunt therefore dismissed Higgins's lawsuit.

Higgins appeals this dismissal. He contends that the superior court should have allowed him to litigate his claims either as a petition for writ of habeas corpus under Alaska Civil Rule 86 or as a petition for post-conviction relief under Alaska Criminal Rule 35.1. To answer Higgins's contention, we must examine not only the propriety of the superior court's ruling but also the limits of this court's jurisdiction.

■ Unlike the supreme court, this court is a creature of statute. Our jurisdiction is defined by the legislature in AS 22.07.020. Under the pertinent portions of AS 22.07.-020(a), we have appellate jurisdiction in all superior court actions involving "(1) criminal prosecution; (2) post-conviction relief; ... (5) habeas corpus; [and] (6) probation and parole". If Higgins is correct that he should have been allowed to pursue a petition for writ of habeas corpus or a petition for post-conviction relief, then AS 22.07.020(a)(2) and (a)(5) give us the authority to review the superior court's decision denying Higgins the requested relief. On the other hand, if this is an administrative appeal, then this court does not have jurisdiction to review the superior court's decision.

■ Under AS 22.05.010(a), "a party has only one appeal as a matter of right from an action or proceeding commenced in either the district court or the superior court." And AS 22.05.010(c) declares that "decision[s] of the superior court on an appeal from an administrative agency may be appealed to the supreme court as a matter of right." From these two statutory provisions, it follows that if a party wishes to exercise the right of appeal from the superior court's decision of an administrative appeal, the party must take that appeal to the supreme court, not to this court. This is, in fact, where such appeals have gone since this court was established in 1980. *See Kraus,* 759 P.2d 539, as well as *Hertz v. Carothers,*

784 P.2d 659 (Alaska 1990), and *Owen v. Matsumoto,* 859 P.2d 1308 (Alaska 1993).

■ This court has the authority—indeed, the obligation—to determine whether Higgins's litigation falls within our subject-matter jurisdiction. *See O'Link v. O'Link,* 632 P.2d 225, 226 n. 2 (Alaska 1981). To decide this jurisdictional question, we must necessarily decide whether the superior court correctly characterized Higgins's claim as an administrative appeal. If we agree with the superior court that Higgins's litigation is an administrative appeal, we would necessarily also conclude that we have no appellate jurisdiction to rule on the merits of the superior court's order dismissing that appeal.

■ We now turn to the superior court's ruling that an administrative appeal is Higgins's sole method for challenging the Department of Corrections' revocations of his good time credit. Review of the superior court's decision presents two issues. First, is Higgins entitled to any type of judicial review of the Department of Corrections' decisions to take away his good time credit? Second, if Higgins does have a right to judicial review, what procedural mechanism(s) must he follow to obtain that review? Both of these issues are purely legal questions. We therefore decide them without deference to the superior court's ruling. *Conner v. State,* 696 P.2d 680, 682 (Alaska App.1985).

In *McGinnis v. Stevens,* the Alaska Supreme Court established due process standards for prison disciplinary proceedings. The court held that prisoners have only a limited right to judicial review of prison disciplinary proceedings:

> Since *Wolff* [*v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)] acknowledges that a prison disciplinary proceeding is not a criminal prosecution, ... a [right of] appeal to the superior court is not required by the federal constitution. Nor is a right to an automatic appeal, as a matter of due process, required by Alaska's constitution.... In our view, the primary law source for resolution of disciplinary proceeding issues is the Division of Corrections' regulations. Interpretation and application of these regulations should

be, and is, committed in the first instance to employees of the Division of Corrections[.]

*McGinnis,* 543 P.2d at 1235–36. However, in a footnote to the above-quoted text, the supreme court added:

> If fundamental constitutional rights are alleged to [have been] abridged in disciplinary proceedings, it would be the duty of the court to inquire into the allegations.

*McGinnis,* 543 P.2d at 1236 n. 45.

In *Kraus,* the supreme court was asked to clarify the scope of judicial review granted by *McGinnis. Kraus* involved two prisoners, Kraus and Winter, who had lost good time credit as a result of their violation of prison rules. Seeking reinstatement of their good time credit, the prisoners filed administrative appeals to the superior court under Alaska Appellate Rule 602. The State asked the superior court to dismiss both appeals for lack of jurisdiction; when the superior court refused to dismiss the appeals, the State brought a petition for review to the supreme court. *Kraus,* 759 P.2d at 539–540.

The supreme court reaffirmed that, under *McGinnis,* "prisoners have a right to judicial review of major disciplinary proceedings [when] issues of constitutional magnitude are raised". *Kraus,* 759 P.2d at 540. The court also held that, because the prisoners had suffered loss of good time credit, the disciplinary proceedings against them had been "major" for purposes of applying *McGinnis. Kraus,* 759 P.2d at 540 n. 3. The court next rejected the State's contention that prisoners should invoke their right of judicial review by filing a petition for writ of habeas corpus or a petition for post-conviction relief.

> We reject the state's argument for several reasons.... [I]n *McGinnis* we referred to the judicial review of major disciplinary proceedings as an appeal.... [W]e agreed ... that [this] review would be based on the tape recording of the disciplinary proceedings. A review on the record, as distinct from de novo reception of evidence, is a characteristic of appeals.... [Moreover], this court has consistently shown a preference for reviewing adjudicative decisions of an administrative agency by means of an appeal.... The

essential question is a functional one: does the claim before the superior court challenge a prior administrative decision? If the answer is affirmative, Appellate Rule [602] applies.

*Kraus,* 759 P.2d at 540 (citations omitted). See also *Hertz v. Carothers,* 784 P.2d 659, 660 (Alaska 1990) (per curiam), where the court summarized this aspect of *Kraus:* "In . *Department of Corrections v. Kraus* ... [we] determined that the judicial review of inmate disciplinary proceedings, when constitutionally required, must be conducted in an appeal rather than any other type of proceeding."

On appeal, Higgins contends that *McGinnis* and *Kraus* do not necessarily mean that an administrative appeal is the sole method for challenging Department of Corrections disciplinary decisions. Higgins argues that habeas corpus and post-conviction relief petitions present alternative procedural avenues for pursuing his claims. Higgins admits that *Kraus* appears to foreclose his argument, since the supreme court in *Kraus* expressly rejected the State's contention that prisoner lawsuits should be prosecuted as petitions for writ of habeas corpus or as petitions for post-conviction relief. Nevertheless, Higgins asserts that his lawsuit is distinguishable from *Kraus* because his case involves, not just the loss of good time credit, but the loss of so much good time credit that restoration of this credit would result in his immediate release from prison (on mandatory parole). We reject Higgins's argument for two reasons.

First, the Alaska Supreme Court has consistently interpreted *McGinnis* and *Kraus* to mean that an administrative appeal is the sole method for seeking judicial review of prison disciplinary decisions. *See Hertz,* 784 P.2d at 660. Compare *Owen v. Matsumoto,* 859 P.2d 1308 (Alaska 1993), in which the court ruled that a prisoner challenging the Department's calculation of his underlying sentence should *not* seek judicial review through the appellate process. Applying the "functional" test it had used in *Kraus,* the court declared that appellate review was inappropriate because the Department's calculation of a sentence does not arise from a trial-like event. That is, when calculating a prisoner's sentence, the Department does not engage in fact-finding or in an exercise of discretion that would produce "records reviewable on an administrative appeal". *Owen,* 859 P.2d at 1310.[1]

Higgins, like the prisoners in *Kraus,* was clearly seeking judicial review of a trial-like event—or, rather, review of a series of trial-like events: the Department of Corrections' various "sentencing" decisions over a five-year span (their decisions regarding how much good time credit to revoke for Higgins's various violations of prison rules). The primary adjudicative events had already occurred; Higgins was asking the superior court to review the Department's adjudications for abuse of discretion. The supreme court has declared that the essential question is one of function: what role did Higgins ask the superior court to play? The answer here, as it was in *Kraus,* is that Higgins was asking the superior court to engage in the equivalent of appellate review. Thus, Higgins's lawsuit must be categorized as an administrative appeal.[2]

---

**1.** Several times in the past, this court has entertained appellate litigation involving the calculation of prisoners' good time credit. *See Briggs v. Donnelly,* 828 P.2d 1207 (Alaska App.1992); *Souza v. State,* 792 P.2d 289 (Alaska App.1990); and *Helton v. State,* 778 P.2d 1156 (Alaska App.1989). *See also Bishop v. Anchorage,* 685 P.2d 103, 106 (Alaska App.1984) (issue moot because the district court lacked subject-matter jurisdiction).

*Donnelly* and *Souza* came to us on appeal from habeas corpus litigation; *Helton* came to us on appeal from a denial of post-conviction relief. However, in none of these appeals were we asked to determine whether a habeas corpus petition or a petition for post-conviction relief was the proper vehicle for litigating the prisoners' claims in the superior court. Moreover, in all these cases, the issue litigated in the trial court was purely one of constitutional or statutory construction: how was a prisoner's good time credit to be calculated under the pertinent sections of AS 33.20 and the regulations of the Department of Corrections? It therefore appears that, under the test laid down in *Owen v. Matsumoto,* none of these cases would have been an "administrative appeal".

**2.** See also *Haynes v. State Commercial Fisheries Entry Comm'n,* 746 P.2d 892, 893 (Alaska 1987), in which the supreme court held that a claim for injunctive relief had to be characterized as an administrative appeal because the superior court could grant the requested injunctive relief only if it determined that the Fisheries Entry Commis-

Higgins asserts that his case is different because, if the Department's sanctions are found to be excessive and reversed, he will be entitled to parole release. But whether or not Higgins would be entitled to parole release, the anticipated judicial function of the superior court would not change. In *Kraus,* the supreme court ruled that the sole way in which the superior court may exercise this appellate function is through an administrative appeal.

A second reason for rejecting Higgins's argument is that it would reward delay and lack of diligence. During the five-year period that Higgins complains of, each time the Department of Corrections took away a portion of Higgins's good time credit, Higgins was entitled to appeal the Department's decision (if he had a colorable claim that the Department had violated his constitutional rights). For five years, Higgins never appealed. Now he asserts that he is entitled to additional procedural rights (the right to pursue either a petition for writ of habeas corpus or a petition for post-conviction relief) because, over this five-year period, the accumulated loss of good time credit has come to equal the number of days remaining in his sentence.

■ Neither a petition for writ of habeas corpus nor a petition for post-conviction relief was intended to take the place of a direct appeal. The "writ of habeas corpus is an extraordinary remedy and will not ordinarily be granted when there is another adequate remedy." *Taggard v. State,* 500 P.2d 238, 241 n. 7 (Alaska 1972). And Criminal Rule 35.1(b) declares that a petition for post-conviction relief "is not a substitute for[,] nor does it affect[,] any remedy incident to the proceedings in the trial court", nor is it a substitute for "direct review of the sentence or conviction".

■ Moreover, a prisoner who inexcusably fails to appeal can not thereafter take advantage of his own neglect to justify a collateral attack on his conviction or sentence (by arguing that the requested collateral attack must be allowed since the right to appeal has expired). *See Stone v. Powell,* 428 U.S. 465, 478 n. 10; 96 S.Ct. 3037, 3044 n. 10; 49 L.Ed.2d 1067 (1976) ("[N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings."); *Sunal v. Large,* 332 U.S. 174, 182, 67 S.Ct. 1588, 1593, 91 L.Ed. 1982 (1947) (absent extraordinary circumstances, the remedy of habeas corpus is not available to defendants "who accept the judgment of [the trial court] and do not appeal"); *Billings v. Maass,* 86 Or.App. 66, 738 P.2d 222, 223 (1987) ("The remedy of habeas corpus is not available to parties who neglect to seek appellate review of the challenged decision.").[3] We therefore reject Higgins's argument that, because he waited so long to appeal the Department of Corrections' various disciplinary decisions, he now should stand in a better legal position than a prisoner who followed the proper procedures and pursued timely appeals.

For these reasons, we agree with the superior court that Higgins's sole procedural mechanism for challenging the Department of Corrections disciplinary decisions was an administrative appeal under *McGinnis* and *Kraus.* Under the facts of this case, Higgins was not entitled to pursue either a petition for writ of habeas corpus or a petition for post-conviction relief.

Because we conclude that Higgins's lawsuit was properly characterized as an administrative appeal, we have no jurisdiction to decide

sion's administrative decision was erroneous. And see *Ballard v. Stich,* 628 P.2d 918, 920 (Alaska 1981), and *Owsichek v. State,* 627 P.2d 616, 620 (Alaska 1981), in which the supreme court held that, when an action for injunctive relief seeks the same type of administrative review from the superior court as could be had through a normal appeal from an administrative order, the action for injunctive relief must be treated as an appeal.

3. The Alaska Supreme Court has ruled that post-conviction relief should be granted to a prisoner who wished to appeal but whose attorney inexcusably failed to file the appeal. *McCracken v. State,* 482 P.2d 269, 272–73 (Alaska 1971). *Compare Pore v. State,* 452 P.2d 433 (Alaska 1969). But Higgins offers no reason for his failure to appeal the various Department of Corrections disciplinary sanctions during the past five years. Moreover, the relief granted in such cases is the right to pursue an appeal, not the right to a new trial or a new sentencing.

the merits of the superior court's decision dismissing that appeal for failure to state a constitutional claim. We therefore do not address Higgins's assertions (1) that he in fact had constitutional claims to raise, (2) that the superior court should have ordered disclosure of all of the Department's records, and (3) that the superior court should have ordered the Public Defender Agency to represent Higgins at public expense. For the same reason, we do not address Higgins's claim that Department of Corrections officials violated the rules governing prisoner discipline established in the class-action lawsuit *Cleary v. Smith*, No. 3AN–81–5274 Civ.

Regarding the classification of Higgins's lawsuit as an administrative appeal, the judgement of the superior court is AFFIRMED. In all other respects, this appeal is DISMISSED for want of jurisdiction.

BRYNER, C.J., not participating.